UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 06-CR-0060-L |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| v. | ) ) | **EVIDENCE** |
| GALDINO GASCA-CASTILLO, | ) ) | [Doc. No. 22-1] |
| Defendant. | ) ) ) | |

On March 2, 2006, Defendant Galdino Gasca-Castillo filed a motion to suppress evidence seized as a result of the stop and search of the vehicle he was driving on the date of his arrest. The Government filed a response and opposition to Defendant's motion and evidentiary hearings were held on September 25 and 26, 2006 and October 18, 2006. Having considered the evidence presented, the submissions of the parties, and applicable case law, the Court concludes that the search of Defendant's vehicle was reasonable under the circumstances. For this reason, Defendant's Motion to Suppress Evidence has been denied.[1]

**Facts**

On December 29, 2005 at approximately 12:20 a.m., Defendant Gasca-Castillo was

---

[1] On October 13, 2006, the Court issued an order summarily denying Defendant's Motion to Suppress Evidence; the Court indicated that this written opinion would follow at a later date.

driving a flatbed truck containing a load of hay when it approached a permanent Border Patrol immigration checkpoint on Highway 86 north of El Centro, California. (Mot. Hr'g Tr. vol. 1, 11-12, 20-23, 31, September 25, 2006.) The checkpoint is located approximately 35 to 40 miles from the United States/Mexico border. (*Id.* at 13.)

Border Patrol Agent William Le Vier was on duty on at the checkpoint when Defendant's truck pulled up. (*Id.* at 20.) Agent Le Vier testified that Defendant's vehicle arrived during shift change at the checkpoint and indicated that in his experience the volume of contraband seized during a shift change is higher than at other periods of time. (*Id.* at 22.) As Defendant's vehicle approached, Agent Le Vier observed that it was a heavy-duty flatbed truck, about the same size as a regular tractor-trailer. (*Id.* at 23.) The name "Gasca Trucking" was visible on the driver's side door. (*Id.* at 24.)

Agent Le Vier initially became suspicious of the vehicle because on the only other occasion that had seen a similar flatbed truck used for transporting hay, the vehicle was discovered to contain eleven undocumented aliens hidden within the hay. (*Id.* at 26.) This prior incident had taken place approximately four to six weeks earlier, while Agent Le Vier was stationed at another checkpoint in the area, the Highway 111 checkpoint. *Id.*

Agent Le Vier testified that he has observed thousands of trucks hauling hay pass through the Highway 86 checkpoint, but typically hay is transported on open double tractor-trailers or within shipping containers. (*Id.* at 27.) Occasionally, Agent Le Vier has observed smaller loads of hay transported in trailers or in the back of a pickup truck. *Id.* However, Agent Le Vier had not previously seen a flatbed truck carrying a load of hay come through the Highway 86 checkpoint. *Id.*

When Defendant's vehicle came to a stop at the checkpoint, Agent Le Vier identified himself as a Border Patrol agent and asked Defendant to state his citizenship. (*Id.* at 29.) Agent Le Vier questioned Defendant about the ownership of the truck, and Defendant responded that it was owned by his boss and was a company truck. (*Id.* at 32.) Agent Le Vier found this response unusual because Defendant's name appeared on the door of the truck. *Id.* During the encounter at the primary inspection station, Agent Le Vier observed that Defendant's eyes were looking

from side to side and his hands were shaking. *Id.*

Agent Le Vier decided to send Defendant's vehicle to the secondary inspection station and asked Defendant to drive the vehicle there. (*Id.* at 33.) Defendant complied and, once there, Agent Le Vier conducted a closer examination of the bales of hay on the flatbed. *Id.* Agent Le Vier noticed that the hay was stacked unusually in that the hay toward the front of the flatbed was packed very tightly, but toward the rear of the flatbed, the hay was stacked very loosely. *Id.*

A dog trained to detect both drugs and humans was present at the secondary inspection, however, the Court will not include the dog's reactions in its analysis because the Government failed to provide the dog's training materials and records to the defense. *See United States v. Cedano-Arrellano*, 332 F.3d 568, 571 (9th Cir. 2003) (requiring disclosure pursuant to Rule 16 of drug-detection dog's training and certification records because materials were crucial to defendant's ability to assess dog's reliability and conduct an effective cross-examination of the dog's handler). Although the Government maintains that the Court may consider Agent Le Vier's[2] observations of the dog in its analysis, the Court believes that such an attempt to circumvent the disclosure requirements of *Cedano-Arrellano* would be inappropriate as Defendant has nevertheless been deprived of the ability to assess the dog's reliability and conduct an effective cross-examination of Agent Le Vier's testimony regarding the dog's performance.

Agent Le Vier decided to physically probe the bales of hay using an all-terrain vehicle antenna approximately 8 to 10 feet in length. (*Id.* at 37-38.) When the probe was inserted into a crack between two bales of hay, it went in smoothly at first, then would not go any further. (*Id.* at 39.) As he applied more pressure, Agent Le Vier heard a pop, "like a bubble wrap." *Id.* Agent Le Vier removed the probe and detected what he believed to be the odor of marijuana on the end of the probe. *Id.* There was some concern over whether the probe had been used previously that day, therefore Agent Le Vier inserted the other end of the probe into the hay, having first determined that the other end of the probe did not contain any odor of marijuana.

---

[2] Agent Le Vier was not the dog handler in this case. The dog handler, Agent Salas, did not testify.

1  (*Id.* at 39-40). Again, the probe went into the hay smoothly up to a certain point, about the same
2  depth as the first time. (*Id*. at 40.) When pressure was applied, Agent Le Vier again heard a
3  pop. *Id.* When Agent Le Vier removed the probe the second time, he again noted an odor of
4  marijuana on the end of the probe that had been inserted into the hay. *Id.* The entire procedure
5  using the probe lasted less than a minute. *Id.*

6  Using a pocket knife, Agent Le Vier then cut a small hole in the side of the hay. (*Id.* at
7  41-42). Through the hole, Agent Le Vier observed a brown package wrapped with cellophane
8  tape; the packaging was consistent with that of drug packages he has observed on other
9  occasions during his career. (*Id.* at 42.) Agents unloaded the truck and ultimately discovered
10 206 cellophane-wrapped packages containing approximately 1750 pounds of marijuana hidden
11 within the hay. (*Id.* at 44, 47-48.) Defendant was arrested and is charged with possession of
12 marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

**Discussion**

14 Defendant raises two Fourth Amendment claims regarding the events leading to his arrest.
15 First, Defendant contends that the search of the truck was unlawful because it was not supported
16 by probable cause. Second, Defendant contends that Border Patrol checkpoints violate the
17 Fourth Amendment.

18  1.  Detention and Search at Checkpoint

19 A vehicle may be stopped at a permanent checkpoint for a brief immigration inspection
20 even absent individualized suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 543, 562
21 (1972). An agent has wide discretion to refer such a vehicle to secondary inspection and may do
22 so without particularized reasons. *Id*. at 563.

23 The Court finds both the detention of the vehicle and the referral to secondary inspection
24 in this case to be permissible under the standards set forth in *Martinez-Fuerte*. The truck driven
25 by Defendant arrived at the checkpoint at approximately 12:20 a.m. during a shift change — a
26 time when the seizure of contraband is generally increased. Agent Le Vier observed that the
27 truck was a heavy duty flatbed truck, a type of vehicle Agent Le Vier considered to be unusual
28 for use in transporting hay. In fact, Agent Le Vier had recently participated in an incident where

a similar type of truck transporting hay was found to contain eleven undocumented aliens.  In addition, Defendant, the driver, appeared to be nervous and told Agent Le Vier the truck was a company truck owned by his employer when Defendant's surname was printed on the truck's door.  The Court finds these factors sufficient to justify Defendant's detention and referral to the secondary inspection station.

The more difficult question posed in this case is whether the insertion of the probe into the bales of hay was constitutionally permissible.  Defendant maintains that the insertion of the probe constituted a search and thus was required to be supported by probable cause.  The Government asserts that there was ultimately probable cause to search the truck, but the insertion of the probe was not required to be supported by probable cause because Defendant "had no reasonable expectation of privacy in how far a probe might extend into the load of hay he was carrying."  (Gov.'s Resp. to Def.'s Pretrial Mots. at 6.)

The Government likens the insertion of the probe to a dog sniff, and cites *United States v. Place*, 462 U.S. 696 (1983), a case in which the Supreme Court held that the exposure of luggage to a trained narcotics detection dog does not constitute a search for Fourth Amendment purposes.  The *Place* court noted that a dog sniff does not require opening of luggage, it does not expose noncontraband items that would otherwise remain hidden from public view, and it discloses only the presence or absence of narcotics, a contraband item.  In these respects, the canine sniff is *sui generis —* the *Place* court noted it was "aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure."  *Id*. at 707.

The insertion of the probe in this case is distinguishable from the limited intrusion described in *Place*.  Agent Le Vier's insertion of the probe into the hay required a physical intrusion into the contents of the truck bed and the procedure would have exposed any solid item within the hay; it was not limited to the detection of contraband only.  Therefore, the Court cannot conclude that the insertion of the probe into the hay did not constitute a search under *Place*.  Accordingly, the Court must next examine whether the agent's actions were reasonable, as the Fourth Amendment prohibits only unreasonable searches.

The reasonableness of a search is to be determined under the circumstances of each case. *United States v. White*, 766 F.2d 1328, 1330 (9th Cir. 1985). In the context of an automobile stopped at a permanent border checkpoint, the Court must balance the nature and quality of the intrusion upon the defendant's Fourth Amendment interests against the public interests served by the intrusion. *Id.*, citing *Martinez-Fuerte, supra*.

With regard to the nature and quality of the intrusion upon Defendant's Fourth Amendment interests, the Court notes that one maintains a significantly lessened expectation of privacy with respect to a vehicle than one would maintain in the contents of personal baggage, *United States v. Chadwick*, 433 U.S. 1, 13 (1977), or in a home or office, *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). In this case, Defendant's expectation of privacy was further lessened by the fact that the load of hay was unpackaged and carried in plain view on the flatbed of a truck. Although the hay was in Defendant's possession, the Court cannot find Defendant reasonably maintained a high expectation of privacy in hay openly stacked on the back of truck traveling on a public highway.

The degree of the intrusion was relatively minimal. The insertion of the probe took less than a minute and did not significantly disrupt the contents of the truck nor jeopardize the safety of the vehicle. Moreover, the intrusion was narrowly tailored to investigate the specific suspicion harbored by Agent Le Vier: that contraband may have been hidden inside the hay.

The Court finds Agent Le Vier's suspicion regarding the contents of the hay to be reasonable given the circumstances. When Agent Le Vier inspected the truck at the secondary inspection station, he noticed that the hay in the back of the truck was packed very loosely while the hay toward the front of the flatbed was packed very tightly. Testimony at the evidentiary hearing established that customarily bales of hay loaded onto a truck are packed together tightly using a machine known as a squeeze.[3] (Mot. Hr'g Tr. vol. 3, 5-7, October 6, 2006.) The stacks of hay are compressed as tightly as possible for safety reasons and those in the back of the truck

---

[3] Defense witness Felisardo Casares, a professional hay loader, testified about hay loading procedures in general. Mr. Casares was also the person who loaded Defendant's truck prior to the events at issue.

are normally packed as tight as those in the front. *Id.*

The loosely packed hay near the rear of the truck in combination with the other factors which prompted the referral of Defendant's truck to secondary inspection, such as the time of day, the proximity to the international border, the type of truck used and Agent Le Vier's experience with a similar truck used to transport aliens, Defendant's nervousness, and his statement inconsistent with the name on the door of the truck, gave rise to a reasonable suspicion that Defendant's load of hay may have been concealing contraband.

The second part of the balancing test requires the court to evaluate the circumstances of the agent's action in the context of the public interests served by such a practice. *White*, 766 F.2d at 1332.  The *Martinez-Fuerte* court set forth the public interests relevant to a permanent checkpoint: to control the flow of smugglers and illegal aliens, to minimize the intrusion upon each scrutinized traveler; and to reduce the degree of interference with legitimate traffic. *Id.*, citing *Martinez-Fuerte*, 428 U.S. 554-560.  Agent Le Vier's actions served all three goals.  He used the probe the determine whether aliens or drugs were concealed within the hay, a suspicion that was founded upon particularized factors consistent with alien or narcotic smuggling.  The intrusion was minimized, the insertion of the probe took less than a minute to perform and required no displacement nor disruption of the contents of the truckbed.  Finally, the degree of interference with legitimate traffic was minimized as the probe was inserted only after Agent Le Vier developed particularized suspicion with respect to Defendant's cargo.  If Agent Le Vier's suspicions had proven incorrect, Defendant would presumably have been free to proceed within a matter of minutes.

Therefore, in balancing the minimal intrusion upon Defendant's Fourth Amendment interests against the significant public interests served by the insertion of the probe, the Court finds that the intrusion was reasonable and did not violate Defendant's rights under the Fourth Amendment.  Once Agent Le Vier detected the odor of marijuana on the end of the probe, he developed sufficient probable cause to support the further search of the truck.

    2.    <u>Constitutionality of Border Patrol Checkpoint</u>

Defendant contends that the Highway 86 Border Patrol checkpoint was unlawful under

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000), because the primary purpose of the checkpoint was for general interest in crime control. In *Edmond*, the Supreme Court struck down an Indianapolis Police Department program of random vehicle checkpoints designed to interdict illegal drugs. The *Edmond* court held that when law enforcement authorities pursue primarily general crime control purposes, or searches for "ordinary criminal wrongdoing," such stops can only be justified by some quantum of individualized suspicion. The *Edmond* court recognized, however, that temporary immigration checkpoints do not fall within the general crime purpose category, noting that the constitutionality of temporary immigration checkpoints was upheld in *Martinez-Fuerte*, *supra*, based upon considerations specifically related to the need to police the border. The *Edmond* court further noted "[o]ur holding also does not impair the ability of police officers to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose, even where such action may result in the arrest of a motorist for an offense unrelated to that purpose." *Edmond,* 531 U.S. at 48.

In this case, the record establishes that the Highway 86 checkpoint was conducted for immigration-related purposes rather than general crime control purposes. The fact that the checkpoint may have been equipped with a dog trained to detect drugs as well as humans does not change the primary focus of the immigration checkpoint. *See e.g., United State v. Moreno-Vargas*, 315 F.3d 489 (5th Cir. 2002) (recognizing that *Edmond* did not affect the legality of an immigration stop at a fixed checkpoint, regardless of the checkpoint's alleged secondary purpose of drug interdiction and permanent presence of a dog cross-trained to detect drugs as well as humans.). *See also United States v. Soto-Camacho*, 58 F.3d 408 (9th Cir. 1995) (holding that a stop conducted at a temporary checkpoint conducted with a primary purpose related to immigration was not unreasonable under Fourth Amendment, even if the decision as to when the checkpoint would be operated was based in part on drug intelligence.). Accordingly, the Court finds that *Edmond* has no application in this case; Defendant's stop was reasonable under *Martinez-Fuerte*.

/ / /

## Conclusion

Based upon the foregoing, the Court concludes that the stop of the truck driven by Defendant and the ensuing detention and search were reasonable and did not violate the Fourth Amendment.  Accordingly, Defendant's Motion to Suppress Evidence is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 8, 2007

_____
M. James Lorenz
United States District Court Judge